**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

```
--------------------------------------------------x
JOSEPH WHITE,                            :
on behalf of Plaintiff and a class,      :
                                         :
                   Plaintiff,            :
                                         :
         vs.                             :
                                         :
MIDLAND FUNDING LLC, and                 :
MIDLAND CREDIT                           :
MANAGEMENT, INC.,                        :
                                         :
                   Defendants.           :
--------------------------------------------------x
```

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.      Plaintiff brings this action to secure redress regarding unlawful collection practices

engaged in by defendants Midland Funding LLC ("Midland Funding") and Midland Credit Management,

Inc. ("Midland Credit Management"). Plaintiff alleges violation of the Fair Debt Collection Practices

Act, 15 U.S.C. §1692 et seq. ("FDCPA").

### JURISDICTION AND VENUE

2.      Jurisdiction of this Court arises under 15 U.S.C. §1692k(d).

3.      Venue and personal jurisdiction are proper in that the Defendants do business here

and in that their collection letter was received by Plaintiff here.

### PARTIES

#### Plaintiff

4.      Plaintiff is a natural person residing in Brooklyn, New York.

-1-

## Defendant Midland Funding

5. Defendant Midland Funding is a limited liability company organized under the laws of Delaware and engaged in the business of collecting debts in New York and elsewhere. It is authorized to do business in this state. It operates from 350 Camino De La Reina, Suite 100, San Diego, CA 92108. Its registered agent and office is Corporation Service Company, 80 State Street, Albany, New York, 12207.

6. Midland Funding is engaged in the sole or principal business of collecting consumer debts, using the mails and telephone system for that purpose.

7. Midland Funding purchases defaulted consumer debts and then attempts to collect these debts. Among other things, it files thousands of debt collection lawsuits in its own name as plaintiff. Midland Funding files thousands of lawsuits against consumers each year in New York courts.

8. Midland Funding does not originate loans or extend credit to consumers or have any source of revenue other than the liquidation of defaulted consumer debts.

9. Midland Funding purchases defaulted consumer debts for pennies on the dollar, so that it can derive large profits from collection on the consumer debt it purchases.

10. Midland Funding hires Midland Credit Management as its "servicer" to collect on its defaulted consumer debts via:

    a. Collection letters sent by Midland Credit Management to consumers; and

    b. Collection phone calls to consumers.

11. Midland Funding also has Midland Credit Management retain lawyers and law firms to file debt collection lawsuits against consumers. Midland Funding obtains judgments against consumers and then executes on the judgments.

-2-

12.     Midland Funding's debt collection complaints are supported by affidavits of employees of Midland Credit Management that state the consumer owes Midland Funding a certain balance on delinquent accounts.

13.     Midland Funding and Midland Credit Management are wholly-owned subsidiaries of Encore Capital, a public company, and share common management with Encore Capital.

14.     Midland Funding and Midland Credit Management operate in concert with one another and affiliates, to purchase and collect consumer debt on a massive scale.

15.     Midland Funding and Midland Credit Management and their affiliates are one of the largest debt buyers and collectors in the United States.

16.     Midland Funding and Midland Credit Management send collection letters by United States mail, call consumers from call centers in the United States, India, and Costa Rica, furnish consumer information to credit bureaus, and sue consumers in state courts across the country.

17.     Midland Funding and Midland Credit Management purchase or claim to purchase portfolios of old consumer debt from some of the nation's largest consumer finance and telecommunications companies, and from other debt buyers, for pennies on the dollar. These debts primarily consist of charged-off consumer credit card and telecommunications debts, obtained at various points in time after default.

18.     From 2009 to 2015, Encore states in SEC filings that it paid about $4 billion for approximately 60 million consumer accounts with a total face value of some $128 billion. Encore's SEC filings further state: "During the year ended December 31, 2018, we invested $1,131.9 million to acquire portfolios, primarily charged-off credit card portfolios, with face values aggregating $8.5 billion, for the average purchase price of 13.3% of face value. During the year ended December 31, 2017, we invested $1,058.2 million to acquire portfolios, primarily charged-off credit card portfolios, with face

-3-

values aggregating $10.1 billion, for an average purchase price of 10.5% of face value.  During the year ended December 31, 2016, we invested $9,06.7 million to acquire portfolios, primarily charged-off credit card portfolios, with face values aggregating $9.8 billion, for an average purchase price of 9.2% of face value."

19.     About half of Midland Funding and Midland Credit Management's U.S. collection income comes from "legal collections." (Annual report of Encore Capital on SEC Form 10-K for year ending December 31, 2015, original page 39; annual report of Encore Capital on SEC Form 10-K for year ending December 31, 2018, original page 32.)

20.     Requests for default judgments in cases filed in the name of Midland Funding generally are supported by affidavits of employees of Midland Credit Management, attesting to the ownership and amount of the debt.

21.     Upon information and belief, almost all of Midland Funding's resources are devoted to debt collection.

22.     Upon information and belief, almost all of Midland Funding's revenue is derived from debt collection.

23.     Upon information and belief, almost all of Midland Funding's expenses are related to debt collection, including the acquisition of the debts to be collected.

24.     Midland Funding is a debt collector as defined by the FDCPA, 15 U.S.C. §1692a(6), as a person who uses one or more instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts.

**Midland Credit Management**

25.     Defendant Midland Credit Management, Inc. is a Kansas for profit corporation operating from 350 Camino De La Reina, Suite 100, San Diego, CA 92108.  It does business in New

York. Its registered agent and office is Corporation Service Company, 80 State Street, Albany, New York, 12207.

26.    Midland Credit Management uses instrumentalities of interstate commerce or the mails in its business, the principal purpose of which is the collection of debts.

27.    Midland Credit Management regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another, specifically Midland Funding and certain other subsidiaries of Encore.

28.    Recently, Midland Credit Management also claims to take title to debts, and files collection suits in its name.

29.    Upon information and belief, almost all of Midland Credit Management's resources are devoted to debt collection.

30.    Upon information and belief, almost all of Midland Credit Management's revenue is derived from debt collection.

31.    Upon information and belief, almost all of Midland Credit Management's expenses are related to debt collection.

32.    Midland Credit Management is a "debt collector" within the meaning of the FDCPA.

33.    All actions of Midland Credit Management complained of herein were taken as agent of Midland Funding.

**FACTUAL ALLEGATIONS**

34.    This action arises out of Defendants' attempts to collect credit card debts incurred for personal, family or household purposes.

35.    Within one year prior to the filing of this action, Midland Credit Management, on

-5-

behalf of Midland Funding, caused a letter vendor to send Plaintiff the letter in Exhibit A.

36. In order to have the letter vendor send Plaintiff the letters in Exhibit A,
Defendants had to furnish the letter vendor with Plaintiff's name and address, the status of Plaintiff as
a debtor, details of Plaintiff's alleged debt, and other personal information.

37. The letter vendor then populated some or all of this information into a prewritten
template, printed, and mailed the letter to Plaintiff.

38. The FDCPA defines "communication" at 15 U.S.C. § 1692a(3) as "the conveying
of information regarding a debt directly or indirectly to any person through any medium."

39. The sending of an electronic file containing information about Plaintiff's
purported debt to a letter vendor is therefore a communication.

40. Midland Credit Management's communication to the letter vendor was in
connection with the collection of a debt since it involved disclosure of the debt to a third-party with the
objective being communication with and motivation of the consumer to pay the alleged debt.

41. Plaintiff never consented to having Plaintiff's personal and confidential
information, concerning the debt or otherwise, shared with anyone else.

42. In limiting disclosures to third parties, the FDCPA states, at 15 U.S.C. §1692c(b):
"Except as provided in section 1692b of this title, without the prior consent of the consumer given
directly to the debt collector, or the express permission of a court of competent jurisdiction, or as
reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not
communicate, in connection with the collection of any debt, with any person other than the consumer,
his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of
the creditor, or the attorney of the debt collector."

43. The letter vendor used by Midland Credit Management as part of its debt

-6-

collection effort against Plaintiff does not fall within any permitted exception provided for in 15 U.S.C.
§1692c(b).

44.     Due to Midland Credit Management's communication to this letter vendor,
information about Plaintiff is within the possession of an unauthorized third-party.

45.     If a debt collector "conveys information regarding the debt to a third party --
informs the third party that the debt exists or provides information about the details of the debt -- then
the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.,* 804 F.3d
740, 743 (6th Cir. 2015).

46.     Midland Credit Management unlawfully communicates with the unauthorized
third-party letter vendor solely for the purpose of streamlining its generation of profits without regard
to the propriety and privacy of the information which it discloses to such third-party.

47.     In its reckless pursuit of a business advantage, Midland Credit Management
disregarded the known, negative effect that disclosing personal information to an unauthorized
third-party has on consumers.

## COUNT I – FDCPA

48.     Plaintiff incorporates paragraphs 1-47.

49.     Midland Credit Management, Inc., on behalf of Midland Funding, LLC, violated
15 U.S.C. §1692c(b) when it disclosed information about Plaintiff's purported debt to the employees
of an unauthorized third-party letter vendor in connection with the collection of the debt.

50.     Defendants violated 15 U.S.C. §1692f by using unfair means in connection with
the collection of a debt – disclosing personal information about Plaintiff to third parties not expressly
authorized under the FDCPA.

-7-

## CLASS ALLEGATIONS

51.     Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

52.     The class consists of (a) all individuals in New York (b) with respect to whom Midland Credit Management, Inc., had a letter prepared and sent by a letter vendor (c) which letter was sent at any time during a period beginning one year prior to the filing of this action and ending 30 days after the filing of this action.

53.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

54.     On information and belief, based on the volume of Defendants' collection activities and the use of a form letter, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

55.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants' practice as described above violates the FDCPA.

56.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

57.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.     Individual actions are not economically feasible.

    b.     Members of the class are likely to be unaware of their rights;

    c.     Congress intended class actions to be the principal enforcement mechanism

-8-

under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against

Defendants for:

     i.  Statutory damages;

     ii.  Attorney's fees, litigation expenses and costs of suit;

     iii.  Such other and further relief as the Court deems proper.


        *s/ Abraham Kleinman*
        Abraham Kleinman

Abraham Kleinman
KLEINMAN LLC
626 RXR PLAZA
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (FAX)



pro hac vice to be applied for:

Dulijaza (Julie) Clark
**EDELMAN, COMBS, LATTURNER
 & GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

-9-

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

*s/Abraham Kleinman*
Abraham Kleinman